William R. Cooper, Jr., Appellant *v.* The Hong Kong and Shanghai Banking Corporation, Respondent.

M. D. & Co., shipped certain sugars at Manilla for New York, taking bills of lading therefor, transferable to their order on payment of the freight; these bills said firm indorsed in blank and delivered to defendant to secure the acceptance and payment of bills of exchange drawn by the consignors and discounted by defendant. The bills were accepted, and at the request of the drawees, defendant, through its New York agent, delivered the bills of lading to plaintiff, receiving his receipt therefor, which contained an agreement on his part to store the sugars as defendant's property as soon as landed in a public warehouse, delivering warehouse receipts to be retained by defendant's agent until the acceptances were paid or provided for. The intention of the arrangement, it was stated, was "to

protect and preserve unimpaired the lien of the bank or its agent on said merchandise." Plaintiff was a commission merchant in New York and had acted as such for M. D. & Co., in the sale of goods sent by that firm to New York for sale. His practice had been to advance moneys to pay the freight on goods sent by said firm to New York, when received, to sell the same, reimburse himself for the advances and account for the net proceeds. To obtain possession of the sugars on arrival, plaintiff was required to and did pay the freight; he caused them to be entered in the custom house and placed in a public warehouse, taking warehouse receipts in his own name. *Held,* that plaintiff was entitled to have the sum so paid refunded before defendant was entitled to the property; that the latter, whether regarded as pledgee or owner, had the right of possession only on payment of the freight; that plaintiff stood in no position toward M. D. & Co., which made it his duty to advance the money out of his own funds and trust to the personal credit of that firm for repayment; that the receipt required plaintiff to receive the property from the carrier on arrival and store it as the defendant's property, and when defendant thus permitted plaintiff to take the property it became obligated to repay the expenses actually and necessarily incurred by the latter in the performance of his agreement; that the agreement was fully carried out when the lien of the bank was kept exactly in the same state it was. in when the arrangement was made.

*It seems* there is no unvarying rule of law making it the duty of a commission merchant to advance from his own pocket moneys due for freight on property consigned to him by his principals.

(Argued October 6, 1887; decided November 29, 1887.)

APPEAL from that portion of a judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made May 28, 1885, which modified and affirmed as modified a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 13 Daly, 183.)

The nature of the action and the material facts are set forth in the opinion.

*John M. Bowers* for appellant. The plaintiff, as the bailee of the defendant, had a lien upon the goods paramount to any claim of the latter. (*Dows v. Greene,* 24 N. Y. 638; *Smith v. Smith,* 2 Strange, 955; 2 Kent's Com. 440, 558; 2 Blacks. Com. 452; Jones on Bailm. 117; Story on Bailm. § 2; Phillips on Liens, § 476.) The trust receipt established, as between the plaintiff and the defendant, the relation of principal and

agent or trustee and *cestui que trust*. (*Fowler* v. *N. Y. G. Ex. B'k*, 67 N. Y. 138, 145, 146; Story on Agency, § 373; *Powell* v. *Trustees, etc.*, 19 J. R. 284; Perry on Trusts, § 910; *Cowdry* v. *G. R. R. Co.*, 93 U. S. 352; *Noys* v. *Blakeman*, 6 N. Y. 567; *Randall* v. *Dusenbury*, 39 Super. Ct. R. 174; *Fowler* v. *Mut. L. Ins. Co.*, 28 Hun, 199; Edwards on Factors and Banks, §§ 71, 73; Story on Agency, §§ 58, 98.) There is nothing in the trust receipt to negative plaintiff's lien for advances. (*Noonan* v. *Bradley*, 9 Wall. 394; *Hooper* v. *Wells, Fargo & Co.*, 24 Cal. 11; *St. L. & Co. R. R. Co.* v. *Sunick*, 49 Ind. 302; *Menzell* v. *R. R. Co.*, 50 N. Y. 661; Broom's Legal Maxim, [7th Am. ed.], 596, 599, note 4; *Eddis* v. *Burry*, 6 B. & C. 433.) The defendant being benefited to the extent of the freight paid, and the plaintiff having paid the same, and the defendant's lien remaining exactly as it was before such payment, the plaintiff is entitled to receive the same back out of the proceeds of the goods when sold, and in the case at bar, out of the deposit in the Trust Company. (*Rice* v. *Payne D. & Co.*, 53 Law T. [N. S.] 932; *Lee* v. *Bowen*, 5 Biss. 154; *B'k of R.* v. *Jones*, 4 N. Y. 497; *Winter* v. *Coit*, 7 id. 283, 293; *Ind. N. B'k* v. *Colgate*, 4 Daly, 41, 52; *First Nat. B'k of Cin.* v. *Kelly*, 57 N. Y. 37.) The plaintiff should be subrogated to the rights which the carriers had for their freight as against the defendant's interest in the goods. (Sheldon on Subrogation, § 1; *Grosvenor* v. *Phillips*, 2 Hill, 147; *Holbrook* v. *Wight*, 24 Wend. 169; *Morse* v. *Peasant Bros.* 7 Bosw. 199; *Ackerman* v. *Redfield*, 9 Hun, 378; *Davesin* v. *City B'k*, 57 N. Y. 81; *Seggart* v. *Scott*, 6 Esps. 22; *Dart* v. *Ensign*, 47 N. Y. 619, *Downer* v. *Fox*, 20 Vt. 388; *Flacks* v. *Kelly*, 30 Ill. 462; *Wall* v. *Mason*, 102 Mass. 316.)

*Amasa A. Redfield* for respondent. Whether Cooper be considered the mere *alter ego* of Martin, Turner & Co., or an independent third person, advancing money to pay the freight, he was bound, under his agreement, to redeliver the goods, freight paid, to the bank, or else pay the bank's claim. He cannot hold the property to secure a general balance due to

him, for the conditions on which he accepted the property are inconsistent with his holding a lien on the proceeds. (*Reynolds* v. *Davis*, 5 Sandf. 267; *Dodge* v. *Wilbur*, 10 N. Y. 582; *Goodhue* v. *McCarty*, 3 La. Ann. 447; Story on Agency, § 362.) If Cooper can be deemed to have made the advances out of his own funds upon the security of the goods, his subsequent obtaining of Martin, Turner & Co.'s acceptances for the amount of his advances (and for very much more than the amount) was, in legal effect, a substitution for his lien. It extinguished any lien he may have had on the goods, certainly as against the defendant bank. (*Fielding* v. *Mills*, 2 Bosw. 489; *W. Mfg. Co.* v. *Huntley*, 8 N. H. 441; *Trust* v. *Parson*, 1 Hilton, 293.)

Peckham, J. The plaintiff in this action obtained judgment against the defendant for $17,371.81 damages and costs, which judgment was entered upon the report of a referee. The defendant appealed from that judgment to the General Term of the Common Pleas of the city of New York, and that court modified the judgment by deducting therefrom $15,977.41, leaving but $1,394.40 in favor of the plaintiff. From the judgment so modified the plaintiff has appealed to this court.

The referee found the following among other facts: The plaintiff is a general commission merchant in the city of New York, and the defendant is a foreign corporation; that there was a firm of Martin, Dyce & Co. doing business as merchants, at Manilla, in the Philippine Islands, and that firm was composed of the same persons as the firm of Martin, Turner & Co., doing business as bankers in Glasgow, Scotland; that about the 20th of August, 1883, Martin, Dyce & Co. were the owners of a large amount of sugar which they were intending to ship to the city of New York and thence to Canada; that they placed the sugar on board the ship Henrietta and took bills of lading therefor transferable to their order on payment of the freight, and these bills of lading they indorsed in blank. For the purpose of realizing on the sugar as early as possible Martin, Dyce & Co. drew four bills of exchange addressed to Martin, Turner

& Co., requesting them to pay to the order of the defendant corporation, six months after sight, the aggregate sum of nineteen thousand and some odd pounds sterling, and to charge the same to the account of the sugar shipped by the Henrietta to New York; that on the 17th of October, 1883, each of these bills was accepted in writing by Martin, Turner & Co., payable in London; that at the time of the making and delivery of these bills of exchange to the defendant corporation, and as collateral security for the due acceptance and payment at maturity of the same, Martin, Dyce & Co. delivered to it the bills of lading indorsed in blank by them for the sugar shipped on board the Henrietta; that about the 5th of November, 1883, Martin, Turner & Co., at Glasgow, wrote to the defendant corporation at London and asked it to forward to the plaintiff at 168 Pearl street, New York, through its agency in that city, the shipping documents for the sugar shipped *per* Henrietta, which had been hypothecated to such defendant relative to the acceptance of Martin, Dyce & Co., amounting to nineteen thousand and some odd pounds sterling, as above stated. The letter further stated that in exchange for these shipping documents the plaintiff would give the defendant a letter of obligation, undertaking to hold the sugar on its account and pay to it the proceeds when realized; that on the 19th of December, 1883, the plaintiff received from the New York agent of the defendant corporation the bills of lading above mentioned for the said sugar, and at the same time the plaintiff delivered a receipt therefor a copy of the material portion of which is as follows:

"NEW YORK, 19*th December*, 1883.

"Received from the agent Hong Kong and Shanghai Banking Corporation, bill of lading and invoice for merchandise as follows: (Here follows a description of the sugar.) 'Which merchandise I agree to store as the bank's property as soon as landed in an acceptable public warehouse, delivering warehouse receipt, with policy covering the goods fully against fire, made out or indorsed to the order of said agent (on the understanding, however, that he is not to be chargeable with

any expense incurred thereon), which are to be retained by him until Martin, Turner & Co.'s acceptance against said merchandise shall have been paid or satisfactorily provided for. The intention of this arrangement is to protect and preserve unimpaired the lien of the bank or its agent on said merchandise.

" (Signed) "W. B. COOPER, JR.
" *Trustee.*"

The plaintiff subsequently caused tne sugar to be entered in the custom-house, discharged from the ship and placed in a public warehouse, taking warehouse receipts in his own name as trustee and insured the sugar against loss by fire. In order to obtain possession of the sugar he was compelled to and did pay the ship's claim for the freight which amounted to the sum of $13,546.39. This payment he made from his private means. Just prior to March 15, 1884, the agent of the defendant demanded of the plaintiff the warehouse receipts for the sugar, which the plaintiff declined to deliver until payment to him of the amount of his outlays for freight and insurance, together with the amount of a claim he made for his services in attempting to sell the sugar. Thereupon an agreement was made between the parties providing substantially that the plaintiff should give up the warehouse receipts, and that the defendant should deposit with the Central Trust Company $23,000 to abide the judgment of the court in an action which was to be brought by the plaintiff against the corporation to enforce his claim for repayment to him of the amount he had paid for freight, etc., as above stated. On the twenty-sixth of February, and before the maturity of the bills of exchange drawn by Martin, Dyce & Co. upon Martin, Turner & Co., they both made an assignment and went into bankruptcy. The sugar did not sell for enough to pay the claims of the defendant holding the bills of exchange above-mentioned, and the freight paid by the plaintiff. This action was brought in conformity with said agreement.

It appears in the evidence that the plaintiff was a commission merchant in the city of New York, having business trans-

actions with the firm of Martin, Dyce & Co., at Manilla; that these transactions consisted in soliciting orders here for such of the products of the East Indies as were dealt in by that firm, and to be delivered by Martin, Dyce & Co., and he also acted as a commission merchant for them in the sale of goods which they sent to New York for that purpose. There were no other relations between the parties. The practice of the plaintiff had been when goods of the firm were received in New York, to sell the same and account for the proceeds. He paid the freight on the various cargoes which were received by him by advances made by himself and reimbursed himself for his payments from the proceeds of the sale of the property.

There was evidence tending to show that his advances were made, not upon the faith or credit of his consignor, but upon the security of the property which was consigned here. It also appeared that although he sometimes drew drafts upon the firm for the purpose of paying freight and other charges upon the goods coming here, yet he always himself provided for the payment of such drafts, and when they matured he paid the money. There was also evidence that in this particular case he availed himself of no moneys raised in that way, but advanced the amount directly from his own pocket.

The referee decided that the amount of the freight thus paid by him in the case in question, he was entitled to have repaid before the defendant corporation would be entitled to the property, and he gave judgment accordingly. The General Term did not reverse the referee's decision upon any question of fact, but assuming the facts to be as found by the referee, that learned court deduced a different conclusion of law, and held that the plaintiff, in advancing the money to pay the freight on the goods in question, was simply performing a duty which he owed to Martin, Dyce & Co., as their agent, and was doing for them what they would have been obliged to do themselves if they had been here, and that as the lien of the defendant corporation was the paramount one the plaintiff in paying that freight could not be substituted in their place and have himself a lien superior to that of the bank.

In this result we think the learned General Term fell into an error. It may be assumed that Mr. Cooper, acting in his capacity as commission merchant for the firm of Martin, Dyce & Co., in regard to this cargo of sugar which was to arrive per Henrietta, went to the agent of the defendant in New York for the purpose of seeing what arrangement could be made for the sale of the sugar and the payment of the proceeds to the defendant so far as its claim went. The defendant was in this position: It had advanced money upon bills of exchange and had received as collateral security for their payment the bills of lading indorsed in blank by the consignor of the sugar. This placed the title to the sugar in the corporation defendant. The sugar was in the Philippine Islands and was to be brought to New York and thence transported to Canada for ultimate consumption there. The transportation necessarily involved a large expenditure in the way of payment for freight. The carrier had the first lien on the goods to secure the payment of such freight. When the sugar arrived in New York, no matter who was the owner, or what the liens on the property were, the property itself could not be taken from the possession of the carrier until the freight thereon was paid in full. The defendant, therefore, whether as pledgee or owner, had the right to its possession only on payment of the freight. In truth, however, the only interest which the defendant had was that the property should sell for the highest amount in order the more effectually to secure it for the advances it had made upon the bills of exchange in question. When the plaintiff went to the agent of the defendant and the agreement above alluded to was made, we think that he stood in no position towards the firm of Martin, Dyce & Co., which made it his duty to advance the money necessary to the payment of the freight out of his own pocket and trust to the personal credit of Martin, Dyce & Co., for repayment. On the contrary, taking the situation as it then was and reading the receipt signed by the plaintiff and delivered to the agent of the defendant in New York, we think the transaction amounted to this: Here was a large amount of sugar coming

to the city of New York, owned by Martin, Dyce & Co., really, but subject, first, to the lien of the carrier for freight; next to the lien of the defendant to hold it as security for the payment of the bills of exchange, and in case of failure, subject to the right of defendant to sell the same. From the evidence in the case we think the referee was fully justified in holding that it was not the duty of the plaintiff to personally advance the money to pay the freight on the property and trust to the personal credit of Martin, Dyce & Co., for repayment; that he did not in this transaction so far occupy the position of agent to Martin, Dyce & Co., as to make it incumbent on him to do what they would have been bound to do if here, namely to pay the freight, to the extent, at least, of making such payment from his own funds.

Looking at the situation as it existed at that time, we think the fair construction to be placed on the receipt is that the plaintiff was to take the property from the carrier upon its arrival and store it as the bank's property as soon as landed, and in order to do so it was known by both parties that it would be necessary to pay the carrier the freight on the property. As the defendant could not have procured the property until the payment for freight had been made, when it permitted the plaintiff to take the property and store it as the property of the bank, he was entitled to be repaid by the bank the expenses actually and necessarily incurred by him in the performance of that agreement, and those expenses included the amount he was obliged to pay in order to obtain the delivery of the property to him, thus enabling him to fulfill his agreement to store the same as the bank's property as soon as landed.

The statement in the receipt as to the intention of the arrangement, being to protect and preserve unimpaired the lien of the bank or its agents, on this merchandise, shows plainly why this arrangement was entered into, and that the arrangement is fully carried out when the lien of the bank is kept exactly in the same state that it was in when the arrangement was made, namely, the right to the possession of the property

upon its arrival in New York upon payment of the freight to the carrier.

It is stated that the plaintiff made this payment, not at the request of the defendant or its agent, but in pursuance of his duty to his principal, Martin, Dyce & Co. What has already been said answers that statement. The very fact that the plaintiff was permitted to have the shipping documents which entitled him to the possession of the property, upon signing the receipt above-mentioned, shows that there was an implied request on the part of the defendant that he should do those things which were necessary to be done in order to enable him to carry out the agreement which he made with the bank's agent to store the goods as the property of the bank as soon as they arrived.

There being no unvarying rule of law which makes it the duty of a commission merchant to advance from his own pocket the moneys due for freight, upon property consigned to him by his principals, the plaintiff was not himself bound in his character simply as a commission agent to make such payment. There being no absolute legal rule in such a case imposing such responsibility upon a commission merchant it depends in this case upon the facts whether there was any such duty owing by the plaintiff to his principal, Martin, Dyce & Co. Upon that question the evidence, to say the least, was conflicting, and that which tended to show that there was no such agreement or custom between the parties was amply sufficient to support the finding of the referee that the plaintiff in paying this freight money was not acting as the agent of Martin, Dyce & Co., but paid it on the faith and strength of the property whose possession he thus acquired. We think the judgment of the General Term, modifying the judgment entered upon the report of the referee, should be reversed, and that of the referee affirmed, with costs.

All concur.

Judgment accordingly.