THE HONG KONG AND SHANGHAI BANKING CORPORATION, Appellant, v. WILLIAM B. COOPER, Jr., Respondent.

An agreement of parties to an action to limit judicial inquiry, when not unreasonable or against good morals or public policy, is binding upon the courts.

In September, 1883, defendant, who was the agent in New York of the firm of M., D. & Co., of Manilla, sold 4,000 bales of hemp, "to arrive," at a specified price, payable on arrival of the hemp at New York from Manilla. The contract of sale was made by defendant in his own name, but was intended to be on account of his principals, whom he immediately notified thereof. In October of that year M., D. & Co. shipped from Manilla, by the Polynesian, 4,000 bales of hemp, deliverable to their order in New York, intending the hemp to be used in fulfillment of said contract; they indorsed, in blank, the bills of lading therefor, which were made out to M., D. & Co., or order or assigns, and delivered them to plaintiff to secure the payment of five bills of exchange drawn by said firm; upon which plaintiff made advances to said firm. These advances were made, without any knowledge on the part of plaintiff of said sale by defendant. In December defendant received notice from M., D. & Co. that they had shipped the hemp by the Polynesian. In January, 1884, plaintiff, at the request of the drawees and acceptors of the bills of exchange, forwarded the bills of lading to its agent in New York, "to be delivered to defendant in exchange for his trust receipt." In February the drawers and drawees of the bills of exchange failed. In March plaintiff wrote to defendant inquiring whether the hemp on the Polynesian had been sold "to arrive." Defendant answered that it had, but soon after rescinded his "notice,"

so-called, that this hemp had been sold, and stating that "the sales of hemp" were made in his name and he should treat them as made for his own account. On arrival of the Polynesian plaintiff, by virtue of the bills of lading, took possession of the hemp; the price had fallen so that it could then be purchased in the New York market at much less than the contract-price. Plaintiff demanded of defendant that he should deliver the hemp under the contracts, paying over to it the proceeds, less commissions and expenses, to the extent of its said advances, which defendant declined to do. Thereupon the parties agreed that defendant should receive the hemp, deliver it on the contracts, deposit a sum agreed upon as "profits," to await the determination of a litigation, pay over to plaintiff the balance, less commissions, etc.; the parties stipulating that should the court decide that defendant "had the right, as against" plaintiff, to deliver on his contracts other hemp purchased by him in these markets, judgment should be rendered in his favor for the amount so deposited. The hemp was thereupon received and delivered by defendant upon said contract; the amount paid over to plaintiff was insufficient to pay its advances. In an action to determine the rights of the parties to the deposit, *held*, that, as against plaintiff, defendant had the right to deliver other hemp than that in question, and so was entitled, under the agreement, to the deposit; that, assuming the contracts of sale, although made in defendant's name, were the acts and property of his principals, plaintiff had no interest in or control over them.

*It seems* that, had the said contracts provided for a delivery of the hemp to arrive by the Polynesian, a different question would have been presented.

(Argued April 16, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 1, 1886, which affirmed a judgment in favor of defendant, entered upon the report of a referee.

In 1883 the firm of Martin, Dyce & Co. carried on a mercantile business at Manilla, in the Philippine Islands, and the firm of Martin, Turner & Co., composed of the same persons, carried on a banking business at Glasgow, Scotland. In September of that year the defendant, a commission merchant in New York and the agent of said firms, sold four thousand bales of hemp, "to arrive" during October and November following, at from ten and three-quarters to ten and five-eighths cents per pound, payable on arrival of the hemp at New York from Manilla, and at once notified Martin, Dyce & Co. of such sale which, although made in defendant's name,

was intended to be on their account. On October twentieth Martin, Dyce & Co. shipped from Manilla, by a vessel known as the Polynesian, four thousand bales of hemp deliverable to their order in New York, indorsed the bills of lading received therefor in blank and delivered them to the plaintiff, a banking corporation doing business in New York, London and certain cities in Asia, to secure the payment of five bills of exchange drawn by the Manilla firm upon the Glasgow firm. The bills of lading were made out in the name of Martin, Dyce & Co., or order or their assigns. At the same time the plaintiff advanced to Martin, Dyce & Co. over £18,700 sterling upon said bills of exchange, which were afterward accepted by Martin, Turner & Co. and became payable about the 1st of June, 1884. Such advance was made without any knowledge by the plaintiff of said sale by the defendant, and without any expectation thereof or reliance thereupon. December twentieth the defendant received notice from Martin, Dyce & Co. that they had shipped the hemp by the Polynesian. On the 22d of January, 1884, Martin, Turner & Co. requested the plaintiff at London to forward to its agent at New York the bills of lading for said hemp "to be delivered to the defendant in exchange for his trust receipt." They were forwarded accordingly and were received by said agent on the 3d of February, 1884. It was the intention of Martin, Dyce & Co. when they shipped the hemp to use it to fulfill the contracts of sale made by the defendant. About February twenty-ninth the firms of Martin, Dyce & Co. and Martin, Turner & Co. became and have ever since remained insolvent, and they have not paid said bills of exchange nor the sum of over $20,000 which they owed to the defendant at the date of their failure.

On the fifth of March the plaintiff wrote to the defendant inquiring whether the hemp on the Polynesian had been sold "to arrive." The defendant, who up to this time did not know of plaintiff's interest in the hemp, answered that it had been so sold for more than £4,000 over its value at that time, and that the contracts had been taken by him in his own name. On the tenth of March the defendant wrote

to the plaintiff rescinding his "notice" so-called, that the hemp had been sold and stating that "the sales of hemp" were made in his name; that they "were intended for account of Martin, Turner & Co.," and that his relations with that firm demanded that he should treat the sales as for his own account. The plaintiff made no advance and incurred no liability on the faith of defendant's letter stating that he had sold the hemp, nor did it in any way change its position in reliance thereupon. In the meantime the price of hemp had so fallen that similar hemp could have been purchased in the market at New York for $17,950 less than the contract-price. Upon the arrival of the Polynesian at New York on the eighteenth of March, the plaintiff, by virtue of the said bills of lading, took possession of the hemp on board thereof and shortly afterward demanded of the defendant that he should deliver that hemp in fulfillment of the said contracts made by him, and pay over the proceeds, after deducting his commissions and expenses, to the plaintiff to the full extent of its advances to Martin, Dyce & Co. upon the transfer and pledge of the bills of lading. The defendant declined to do this, claiming that he had the right to purchase other hemp in the market and deliver it upon his contracts and to apply the profit of $17,950 in reduction of the amount which his insolvent principals were owing him, even if they had not authorized him to do so. Thereupon, in order that the benefit of the contracts might not be lost by delay, the parties agreed that the defendant should receive the hemp from the plaintiff, deliver it to the purchasers, deposit the amount of the "profits," fixed at $17,950, with a trust company, and pay over the balance, less commissions and expenses, to the plaintiff on account of its said advances, leaving it to the courts to decide who was entitled to said fund. The defendant accordingly delivered said hemp to his vendees and received therefor the sum of $112,514.14, of which he retained $6,471.91 "for commissions, marine insurance and sundry expenses;" deposited $17,950 with the Union Trust Company, which agreed to allow interest thereon at the rate of one and one-half per cent per annum, and the remainder, $88,090.23,

he paid over to the plaintiff. After applying said amount upon the indebtedness of said firms to the plaintiff there was still unpaid $22,352.57.

This action was brought to recover the fund so deposited; to procure an adjudication that the defendant is not entitled to any part thereof, and for a judgment against him personally for the net balance received upon the sale of the hemp. The referee before whom the action was tried, after finding the foregoing facts, in substance, also found that the sum of $3,367.35, was paid by the defendant for marine insurance upon the hemp after the plaintiff had made said advance to Martin, Dyce & Co., and had received a transfer of the bills of lading, and that it was not paid by plaintiff's authority. The referee further found that in 1877 an agreement was entered into between Martin, Dyce & Co. and the plaintiff, which, after stating that the latter might, from time to time, purchase from, or negotiate for, said firm bills of exchange drawn or indorsed by it, with collateral securities, authorized the plaintiff, in case the drawees or acceptors of such bills during the currency thereof should suspend payment or become bankrupt, " to sell all or any part of the goods forming collateral securities," at such time and in such manner as the plaintiff should deem fit, to apply the net proceeds in payment of such bills, and the balance, if any, upon any other debt or liability of said firm to said bank; that " the transaction relative to the hemp by the Polynesian was had," under said agreement, and that before said vessel arrived, and prior to defendant's letter of March fifth, the event provided for by said clause had happened. The referee ordered judgment in favor of the plaintiff and against the defendant for said sum of $3,367.35, retained by him for marine insurance paid, but awarded the fund of $17,950, on deposit with the Union Trust Company, to the defendant.

*Amasa A. Redfield* for appellant. An interest may be created in a fund, in the nature of equitable property, obtained through what amounts to an equitable assignment, which

interest may be enforced by an action, even though the depositary has not assented to the transfer. (*Field* v. *Mayor, etc.*, 6 N. Y. 179; *Brill* v. *Tuttle*, 81 id. 454; *East Lewisburg Co.* v. *Dunkel*, 91 Penn. St. 96; 3 Pom. on Eq. Jur. § 1280.) The facts establish an equitable assignment of the fund which the agent could not defeat. (3 Pom. on Eq. Jur. § 1283; Story's Eq. §§ 1040, 1055; *Brill* v. *Tuttle*, 81 N. Y. 454; *Munger* v. *Shannon*, 61 id. 251.)

*John M. Bowers* for respondents. There is no privity between the parties. The defendant owed the bank no duty; the bank had no claim on him. (*A. P. Co.* v. *Graflin*, 114 U. S. 492; *Colvin* v. *Holbrook*, 2 N. Y. 126; 2 Comst. 129; *Copperwaite* v. *Sheffield*, 3 N. Y. 243; *F. N. Bank* v. *Whitman*, 94 U. S. 343; *Atty.-Gen.* v. *C. L. Ins. Co.*, 71 N. Y. 325; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 id. 82–87; *Raney* v. *Weed*, 3 Sandf. 577; *Hall* v. *Lauderdale*, 46 N. Y. 70; *Cobb* v. *Beckey*, 6 Q. B. 930; *Savings Bk.* v. *Ward*, 120 U. S. 195; *Robertson* v. *Fleming*, 4 Macq. H. of L. Cas. 167–209; *Winterbottom* v. *Wright*, 10 M. & W. 109; *Hills* v. *Snell*, 104 Mass. 173; *Ice Co.* v. *Potter*, 123 id. 28; *Fulton* v. *Jones*, H. & M. 564; *Stephens* v. *Babcock*, 3 B. & A. 354; *Denny* v. *Mfg. Co.*, 5 Denio, 639; Id. 115; *Mackersey* v. *Ramsey*, 9 Cl. & Fin. 818; *In re N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 447, 453.) The plaintiff was the absolute owner of the hemp. (*Moors* v. *Kidder*, 106 N. Y. 132; *Hale* v. *Smith*, 1 B. & P. 563; *First Nat. Bk. of Toledo* v. *Shaw*, 61 N. Y. 283, 296; *F. and M. Nat. Bk.* v. *Logan*, 74 id. 568.) There was no appropriation of this hemp for the fulfillment of particular purchases. (Edw. on Bailm. § 365; *Bank of Rochester* v. *Jones*, 4 N. Y. 497; *Mitchell* v. *Ede*, 11 Ad. & El. 888; *Winter* v. *Coit*, 7 N. Y. 288; *M. Bk. of Chicago* v. *Wright*, 48 id. 1.) The doctrine that a consignor who attaches a bill of lading to a draft drawn by him thereby indicates an intention to appropriate the proceeds of the sale of the goods therein mentioned to the payment of the draft has no application

here. (*Bank of Rochester* v. *Jones*, 4 N. Y. 497; *Winter* v. *Colt*, 7 id. 288; *First Nat. Bk.* v. *Kelly*, 57 id. 37; *Cayuga Bk.* v. *Daniels*, 47 id. 631; *Field* v. *Mayor, etc.*, 6 id. 179; *Brill* v. *Tuttle*, 81 id. 454; *E. L. Co.* v. *Marsh*, 91 Pa. 96.)

Vann, J. The question presented for decision by the written agreement of the parties, as well as by their pleadings, is whether the defendant had the right, *as against the plaintiff*, " to deliver to the purchasers of said hemp, under the contracts aforesaid, other hemp than that received from Martin, Dyce & Co. or Martin, Turner & Co. from Manilla, to wit, hemp not· received by the said ship Polynesian, but purchased by" the defendant " in the New York market at some time after the said bankruptcy of the said Martin, Turner & Co., and after the 1st of March, 1884; or whether, on the other hand, the said" plaintiff " was entitled to demand, *as against the defendant*, that the 4,000 bales of hemp received by the Polynesian from Manilla, aforesaid, should be delivered under and in fulfillment of the said contracts of sale and the proceeds thereof applied in satisfaction of their advances against such hemp?" The agreement further provided that in case the court should finally decide that the defendant " had the right, as against the" plaintiff, " to substitute such other hemp purchased by him in open market after the times aforesaid for the hemp received from Martin, Dyce & Co., as aforesaid, judgment shall be in his favor for the amount so deposited with the trust company, and in case the court shall finally decide that he had not such right of substitution, judgment shall be rendered in favor of the" defendant " for the amount so deposited."

The parties by thus defining the question and prescribing the remedy have confined discussion to narrow bounds. The rights of third persons, however apparent or important, are expressly excluded from consideration. We are asked to pass upon the right of the defendant, simply as against the plaintiff, to substitute other hemp in performance of the contracts; and, conversely, upon the right of the plaintiff, simply

as against the defendant, to demand that its hemp only should be used for that purpose. The agreement of the parties to thus limit judicial inquiry is binding upon the courts, as it is not unreasonable nor against good morals or public policy. "Parties by their stipulations may in many ways make the law for any legal proceeding for which they are parties, which not only binds them, but which the courts are bound to enforce." (*Matter of Petition of New York, L. & W. R. R. Co.*, 98 N. Y. 447, 453.) The defendant admits that his principals are entitled to the benefit of the sum which he seeks to recover in this action, but he claims the right to apply it upon their indebtedness to him, rather than to permit it to be applied by the plaintiff upon their indebtedness to it. He denies that the plaintiff had any interest in the contracts made by him, but claims that he had such an interest in them as would have enabled him to enforce them in his own name, and to account for the profits by off-setting the amount thereof against the sum owing him by his insolvent principals. The claim of the plaintiff seems to be that Martin, Turner & Co. had so appropriated the shipment of hemp to the contracts for the sale of hemp as to operate as an equitable assignment of the profits or of the fund in controversy. The ultimate question, therefore, is what interest, if any, had the plaintiff in said contracts at the time the stipulation was made? The plaintiff practically owned the hemp, as was held in an action between these parties in relation to a cargo of sugar shipped and received at about the same time and under similiar circumstances. (*Cooper* v. *Hong Kong and Shanghai Banking Corporation*, 107 N. Y. 282, 289.) But if not the unqualified owner, it was the pledgee, in actual possession, with absolute power to sell the hemp "at such times and in such manner" as it saw fit. It was its duty to apply the proceeds, less expenses, upon the five drafts and, it was its privilege to apply the remainder, if any, upon any other debt owing it by Martin, Dyce & Co. No interest in the contracts was ever assigned to it. There was no agreement in relation to them between plaintiff and the defendant

·or his principals. It neither acted nor contracted on the strength thereof. It did not even know of their existence until its rights were as complete as they ever became. It accepted the hemp without notice of any intended application or appropriation by Martin, Dyce & Co. Its title, therefore, was free from the effect of said contracts, and it had the right to sell when and to whom it chose, without reference thereto. It is true that Martin, Dyce & Co. intended, when they shipped the hemp, to use it to fulfill the contracts made by the defendant, their agent, but they did not notify the plaintiff of their intention, nor do anything to carry it into effect from which they could not recede at pleasure.

On January 22, 1884, they requested the plaintiff to deliver the bills of lading to him in exchange for his trust receipt. They did not, however, even then notify the plaintiff of said contracts, or of their intended use of the hemp, or of their object in making said request. It was a naked request which they could cancel or withdraw at discretion, and with which the plaintiff could comply or not as it saw fit. It could bind neither party unless acted upon to the detriment of the other. The bills of lading, with a copy of the letter containing said request, were received by the plaintiff's agent at New York on February third, but no action was taken by him until March fifth, when he wrote to the defendant asking if the hemp had been sold. He made no offer to comply with said request, but simply asked for information. The defendant at once replied, stating that "the hemp ex 'Polynesian' is sold at .something like 4,000 pounds over its present value, the con-·tracts being made in my name." Still no offer to comply with ·the request was made. March tenth defendant wrote the .agent of the plaintiff rescinding his letter of the fifth instant, and stating that his relations with Martin, Dyce & Co., who had in the meantime failed, demanded that he should treat the sales of hemp made in his name as for his own account. March eleventh plaintiff's agent wrote defendant saying that he considered that the sales applied "to the 4,000 bales of hemp per Polynesian," but making no tender of the bills of

lading nor any offer to comply with said request. When the hemp arrived on the eighteenth of March, plaintiff's agent asked defendant to take it and deliver it to his purchasers, but he declined, stating that he did not know the plaintiff in the matter. This is, substantially, all that was done by the plaintiff or its agent, or by the defendant or his principals, between the date of said request and March nineteenth, the date of the agreement which created the fund in question. It does not appear that the plaintiff relied upon the request in anyway, or that it did or omitted to do anything to change its position in consequence thereof.

We do not think that the plaintiff acquired any additional right by contract, estoppel or otherwise after it discounted the drafts and accepted a transfer of the bills of lading as collateral. Assuming that the contracts for the sale of hemp, although made in defendant's name, were the acts and property of his principals, still the plaintiff had no interest in them. It had entered into no contract, express or implied, with anyone in relation to them. The contracts could not be enforced either by or against it. If it refused to let its hemp be used to fulfill them, no one could lawfully complain, for they were not binding upon it, and it was under no obligation to anyone on account thereof. If the market-price of hemp had risen, the plaintiff could have sold when and where it chose in defiance of the defendant, his principals or purchasers. No part of the loss could have fallen upon it. How can it claim the benefits of a contract by which it is not bound? What claim had it upon the defendant? What privity was there between them? What right has it to the profits since it was not bound to stand the losses? If it could not enforce the contract in its own name, without reference to the defendant, how could it enforce them through him? If it could not compel the purchasers to accept, how could it compel the defendant to deliver?

The parties do not ask us to decide whether the defendant had the absolute right, as against everyone, to substitute hemp purchased by him in the open market, but simply whether he had that right as against the plaintiff. As we have already

seen, the plaintiff had no control over the contracts, so that the defendant could act independently and in disregard of its wishes deliver any hemp to his purchasers that would satisfy them. He did not agree with them to deliver the hemp on board of the Polynesian, or any specific hemp, but simply hemp shipped during October and November from Manilla. The contracts were not so connected with the hemp of the plaintiff as to become a part of it, at its election, because that particular hemp was not sold by the defendant, nor attempted so to be. If the contracts had been for hemp to arrive by the Polynesian, a different question would have been presented. The purchasers dealt exclusively with the defendant and knew no one else in the transaction. If he tendered them any hemp shipped during the time and from the place named in the contract, they were bound to receive it. The stipulation admits that he could have bought such hemp, and if he had done so the plaintiff could not have claimed the profits. As no right was created by the stipulation, except as to the remedy, which did not exist before, it cannot now claim the profits. We think that the defendant, as against the plaintiff, had the right of substitution as defined in the agreement between the parties, and that the plaintiff is not entitled to the fund in question. We do not pass upon the rights of the defendant as against his principals or their representatives. Their rights are not affected by this decision, as the judgment appealed from expressly declares that it " is without prejudice to any superior right of a creditor or assignee of Martin, Turner & Co. or Martin, Dyce & Company, if any such exist." We have examined the authorities cited upon either side, but while some of them throw light upon the subject none of them impress us as analogous.

As the agreement provided that the defendant should deduct his commissions, he had the right to do so. The learned referee found that the sum retained for this purpose was fairly earned. He reserved from the gross proceeds on this account no more than the plaintiff agreed that he might. What sub-sequently transpired between the defendant and his principals,

or their assignees upon the subject, is of no concern to the plaintiff.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.