Earl, J.
The defendants’ demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action, having been overruled in the courts below, they have appealed to this court.
The complaint is very verbose and lengthy, occupying more than fifty pages of the printed record. We will not attempt to make a precise or comprehensive abstract of it. It is sufficiently accurate for the present purpose and for the exposition of the principles of law applicable to this case to state that it alleges in substance the following facts : That- Hugh Murphy died in the town of Le Roy in this State in 1826, leaving three sons and four daughters, of whom the defendant, Mary Murphy, now about ninety-five years old, is the last survivor; that none of these brothers and sisters was ever married except the. father of the plaintiff, who was married in 1837 and died in-1861, leaving the plaintiff his only child and heir-at-law; that plaintiff was born in 1839 I that at and after the death of Hugh Murphy his seven children became and were tenants of a farm situated in the village of Le Roy; that they all lived together upon the farm until the marriage of the plaintiff’s father, and he some time after his marriage moved *88 to the State of Michigan ; that prior to that time they had made valuable improvements upon the farm and had mutually agreed to own the same together as joint tenants, and that upon the death of either the farm should pass by devise or descent to the survivors ; that after the birth of the plaintiff, and in or about the year 1857, at a family meeting of all the brothers and sisters, there was a mutual agreement entered into, by paro1, as we may assume, by which the prior agreement was re-affirmed, and it was then mutually again agreed that the farm should be owned together, and that as fast as either of them died it should by devise or descent pass to the survivors, and upon the death of the last survivor it should by devise or descent pass to the plaintiff and belong to him ; that this agreement was kept and performed by brothers and sisters until by the successive deaths the title became vested in the defendant Mary, the last survivor of them ; that the defendants Whitney and Moore came to live in the Murphy family many years before the commencement of this action, and several years before, they commenced by fraud, falsehood, undue influence and coercion to obtain from the defendant Mary conveyances of portions of the real estate to themselves and to others ; that the defendant Mary is feeble in body and mind and incompetent to manage her affairs, and that by fraud, artifice, undue influence and coercion they have procured her to convey away all of the real estate, and that they are appropriating the proceeds thereof to themselves ; that during all this time they were well aware of the family arrangement and agreement which had been made for the benefit of the plaintiff in reference to the Murphy farm, and that their fraudulent acts were intended and designed to entirely deprive him of the benefit of that agreement; and he asked for relief, among other things, that the conveyances of the real estate made to the defendants Whitney and Moore be set aside and vacated, and that they be required to account *89 for the proceeds of the real estate sold, and that a receiver '.be appointed, and for other relief.
We think it cannot be said that the complaint, although ■imperfectly and inartificially drawn, failed to allege a cause ■of action. It is claimed on the part of the defendants that the agreement alleged in the complaint as to the holding •and transmission of the real estate, was against public ■policy as contravening the statutes against perpetuities (1 R. S. 723, §§ 14 and 15). Section 14 is as follows : “ Every future estate shall be void in its creation, which shall sus•pend the absolute power of alienation for a longer period than is prescribed in this article. Such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed.” And section 15 is as follows: “The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance ■of not more than two lives in being at the creation of the •estate, except in the single instance mentioned in the next section.” This agreement, assuming it to be valid and binding upon the parties, does not violate either of these ■sections. The absolute power of alienation is not suspended,. because there were at all times persons in being who could convey an absolute fee in possession. All the brothers and sisters uniting with the plaintiff could at any time have conveyed a perfect indefeasible title to the real :estate. Estates can be rendered inalienable by vesting .them in trustees upon some one of the valid trusts mentioned in section 55 of the article upon trusts, so that they become inalienable under section 65 for a period of more than two lives in being at the creation of the trust, or by the creation of future, contingent or expectant estates, so that there are no persons in being during the two lives ■who can convey a perfect title (Smith v. Edwards, 88 N. Y. 104). Here none of these conditions existed. The agreement did not contemplate that the persons interested ■were bound to keep and hold the land. It was an agree *90 ment for the benefit of all the brothers and sisters and of the plaintiff, and no other persons were interested therein, and if they had all, at any time, united in a sale and conveyance of the land, a perfect title would have passed and no rights under the agreement would have been violated.
It is further claimed on the part of the defendants that the agreement was void under the Statute of Frauds, because not in writing. But here there was" part performance sufficient to take the agreement out of the Statute of Frauds. The agreement alleged in the complaint had. been substantially kept by all the parties thereto until the-land became vested in the defendant Mary, and she had thus been largely benefited by the agreement, and had received all the fruits thereof which were to come to her.. She could not, therefore, urge against this agreement that it was void under the Statute of Frauds, because not in writing.
It is no answer to this action, assuming that the plaintiff is able to establish the agreement which he alleges, that the real estate has all been conveyed, and that the title to the farm has thus passed out of the defendant Mary. As the agreement related to land the plaintiff is bound in this-action to show that the facts are such that he would have been entitled to maintain the action if the defendant Mary had still retained the land, and having established such a state of facts he can pursue the land in the possession of those who have taken it with knowledge of the agreement and where the land has been converted into money he has the same right to pursue the proceeds thereof. This is. not a case where the plaintiff was bound to pay anything more for the land, or to perform any further act on his part. The defendant Mary, before she made the conveyances of' the land, had received the whole consideration which upholds the plaintiff’s rights, and whoever takes and withholds, the land or its proceeds from him with knowledge of his. rights is in equity just as liable to him as the defendant Mary herself can be ; and this is certainly so as against *91 the defendants Whitney and Moore, who are alleged to have obtained the property by fraud and to have paid no consideration therefor.
It is no defense to this action that the time has not yet come when the plaintiff could come into possession of the property under the terms of the agreement. The time had come when, assuming the validity of the agreement, he had a vested remainder in the property, and the right that the defendant Mary had to the real estate or its proceeds was a life estate—the right to the income thereof during her life. As a remainderman he 'had the right to protect the estate so that he might receive the same when it ought to come to him by the terms of the agreement. If the defendant Mary still held the land, and there was danger in consequence of her age and feeble mind, and the undue influence, artifice and fraud of the other defendants, that she might convey it to a bona fide purchaser ignorant of the agreements, he could come into a court of equity and restrain the conveyance thereof. And, so far as the land has been converted into money and the defendants Whitney and Moore are appropriating the-same to their own use, and there is danger that it may be dissipated and diverted from the plaintiff, so that he may not be able to get it at the death of Mary, it would be a reproach to equity if its jurisdiction were not sufficient to give him some relief, so that the proceeds of the real estate may be preserved, not only to Mary during her life, but for his benefit at'her death.
Although the plaintiff was not a party to the agreement alleged in the complaint, it was made ultimately for his benefit, as finally the whole Murphy estate, under the agreement, wTas to reach him. The defendant Mary having received the full consideration of the agreement made for his benefit, it cannot be questioned, under many authorities, that he has a standing to enforce it on his own behalf (Gurnsey v. Rogers, 47 N. Y. 233; Vrooman v. Turner, 69 Id. 280).
*92 We do not now determine what relief the plaintiff -shall have, nor the extent, nature or measure thereof. The defendants must answer the complaint, and if the •plaintiff, under the principles of law herein announced, -shall be able to establish a cause of action upon the trial, the relief to which he may be entitled will depend upon the case he will be able to make. All we determine now is that upon the facts alleged he is entitled to some relief.
The judgment should, therefore, be affirmed, but with leave to the defendants to withdraw their demurrer and answer within twenty days, upon payment of all the costs •of the action subsequent to the interposition of the demurrer.
All the judges concurred except BARTLETT, J., not sitting.
Judgment affirmed.
.NOTE ON THE POWER OF THOSE INTERESTED IN THE ESTATE OF A DECEDENT TO SETTLE IT BY AGREEMENT WITHOUT JUDICIAL ADMINISTRATION, OR DIFFERENTLY FROM WHAT THE LAW OF DESCENT AND DISTRIBUTIONS PRESCRIBES.
It has heretofore been settled that the parties interested in the estate of a decedent may, by contract among tliem■selves, dispense with the necessity of administration, and distribute the assets agreeably to their own concurrent wish, provided there are no creditors left unsatisfied (Ledyard v. Bull, 119 JSÍ. Y. 62). The collateral inheritance tax law interposes an obstacle to this right, which may be an effectual prevention in some cases. Such settlements are doubtless often made ; and the freedom of heirs and next of kin, •devisees and legatees to make them, and the legality of the settlement is a valuable advantage to all interested.
The importance of the decision in the text is (1) in the sanction which it gives to the power of a Court of Equity to enforce such an agreement, even when relating to lands, and even though not complying with the Statute of Frauds, provided the circumstances establish a clear equity in its favor ; and (2) in the strong reiteration of the rule, which *93 has been obscured by some decisions in the books, that if there are persons in being who could give good title should they agree, there is no suspension of the power of alienation, even though they be not agreed, or have agreed (without creating a trust) that they will not convey.
Previous cases have determined a number of incidental points of varying importance, and have been much regarded . by conveyancers as affording means of giving ready effect to the wishes of clients, although they have not attracted much attention in litigation.
It will be of interest to my readers to note here some of' the most useful of these decisions, and present precedents which embody a variety of provisions having such an intent.
It may be well to notice that parties to a litigation have-power to stipulate as to what questions the court shall consider, and thus to confine its decision to those points (Hong Kong Co. v. Cooper, 114 N. Y. 388; Matter of N. Y. Lack. & W. R. Co., 98 N. Y. 447; Pacific R. Co. v. Ketcham, 101 U. S. 289). But this rule has not always been applied to proceedings in courts of probate, which have been sometimes regarded as having an administrative rather than a. judicial power ; but it has nevertheless been held, reversing the surrogate, that an admission of counsel on the hearing-of a will contest should, if all the parties on whose behalf it is made are sui juris, be regarded as dispensing with proof (Swenarton v. Hancock, 22 Hun, 28, 40; aff’d without further opinion in 84 N. Y. 633, and rev'g 9 Abb. N. C. 342).
In connection with what is here said, it may be useful to refer to the note in 29 Abb. N. C. 28, on contracts to make.- or refrain from making testamentary dispositions.

Modern Precedents.

Power to collect expectancy, manifesting intent to assign, is valid.

“ Know all men by these presents, that I, John L. D. Eyscleshimer, of the city of Janesville, in the State of Wisconsin, have made, constituted and appointed Caroline M. Sherman, of the county of Rensselaer and State of New York, my true and lawful attorney irrevocable, and coupled with an interest, for me and in my name, place and stead to ask, demand, sue for, and recover and receive all such interest, estate, property and effects, real and personal, as I now have, or at any time hereafter may have, or claim as heir at law, devisee, legatee or next of kin of my father, John P. Eyscleshimer, of said county of, Rensselaer, and to sell, dispose of and con- *94 vey all or any of said estate, property and effects for such prices and on such terms as she may deem proper, and to compromise and settle the estate of my said father, and any estate or interest I havq ■or may hereafter have or claim therein, and to execute and deliver ■all such deeds, conveyances, releases, acquittances and papers as may be necessary or proper thereupon or thereafter, and to receive the proceeds and avails thereof, and of all my interest and estate therein, and all my estate, property and effects aforesaid, and apply the same respectively to the payment and discharge of $1,500 and upwards, in which I am now justly indebted to her, the said Caroline M. Sherman, and the interest already accrued and thereafter to accrue thereon, and finally to do and perform all and every act and thing whatever requisite to be done in and about the premises, as fully as I might or could do if personally present, with full power to her of substitution and revocation, hereby ratifying and confirming all that my said attorney or her substitute shall lawfully do or cause to be done by virtue thereof.
In witness, etc.
In Stover v. Eycleshimer, 4 Abb. Ct. of App. Dec. 309, this was held to take effect on the death of the father, John P., as a transfer in equity of the estate which thereupon descended to the son, the grantor of the power; and that an attachment against the son’s property thereafter levied found nothing as against the creditor for whose benefit the power was given, and this notwithstanding that the consideration was a precedent debt.

Executors and surviving partners of deceased may with consent of ■legatees, etc., fix valuation on payment of which the survivors may take over the business.

This agreement, made between A. B. and C. D., surviving partners of the late firm of , of the first part, and A. B., C. D. and E. F. and as executors under the last will and testament of Y. Z., deceased, witnesseth:
That the said Y. Z. departed this life on or about the day •of ,18 .
That, at the time of his decease, he was a partner in the said firm of , which was dissolved by his death, and, as such co-partner was an owner of an interest in the goods, chattels and effects of said firm, and also in the real estate in which the business of said firm was carried on, at etc
That the said surviving partners and the said executors have •carefully and fully investigated the affairs of said late firm of to ascertain the amount of the interest of said deceased in said real and personal estate of said firm at the time of his decease, and the *95 parties hereto have ascertained and determined, after such examination, that his said interest did not, and does not now, exceed the ¡sum of dollars.
And whereas, the condition of the personal assets and affairs of said firm is such that great length of time will be required, and large expense incurred, in and about the sale and collection of its assets and settlement of its business, which would more than balance any interest on the share of said deceased partner which could be lawfully claimed by the said parties of the second part, as executors as aforesaid.
And whereas, the said surviving partners, parties of the first part, are ready and willing and have offered to pay to the said parties of the second part, as executors as aforesaid, in liqúidation ■ and settlement of the said interest of said deceased the sum of dollars in installments as follows, viz.: designating amounts and days.
And whereas, the said parties of the second part deem it for the best interest and advantage of the devisees and legatees under said will, for the reasons above stated, and for the further reason that, in their opinion, said sum is all that could be realized from a protracted liquidation, to accept said sum, to be paid, as above stated, in full payment, settlement and discharge of all the right, title and interest ■ which the said deceased, at the time of his decease, had in the business property and effects of said late firm of including the real estate above mentioned.
Therefore it is understood and agreed by and between the parties hereto that upon the payment as aforesaid by the parties of the first part to the parties of the second part of said sum in installments as ¡above mentioned, and on the delivery of the conveyance of said real estate as hereinafter provided, that the said parties of the second part, as executors as aforesaid, shall release and forever discharge the said parties of the first part, by proper instrument in writing for that purpose to be duly made, executed and delivered to them, of and from all claim and demand whatsoever which the said deceased at the time of his decease had, or which the parties of the second part as executors as aforesaid have, may or can have against said parties of the first part or either of them as surviving partner or partners of deceased.
It is also further understood and agreed that the right, title and interest which said deceased at the time of his decease had in and to the said premises designated as co-partners as aforesaid, shall, in accordance with the express request and in pursuance of a mutual .agreement between the parties of the first part, be released, granted *96 and conveyed to A. B., one of the parties of the first part, or to such, person or persons as he may designate by a proper instrument executed and delivered by the parties of the second part on or before the day of 18 .
In witness, etc.
Annexed was the following:
In consideration of the sum of one dollar to each of us in hand' paid, the receipt whereof is hereby acknowledged by each of the-other persons signing this agreement, we do mutually for ourselves,, our and each of our heirs and personal representatives, hereby approve the foregoing agreement dated , and providing for a. settlement and liquidation of the interest of Y. Z. in the real and personal assets of the late firm of , and do hereby ratify and confirm the same; and we do hereby jointly and severally covenant and agree that we will not, nor will any one of us, by legal proceedings or otherwise, attempt to sell, or cause to be sold, the whole or any part of the real estate of which the said Y. Z. died seized, possessed or entitled to, except said property number designated at any time prior to the day of 18 , unless each and every of the parties hereto shall, in writing, signify his approval and willingness, that any portion of said real estate should be sold before that time.
In witness, etc. [Signed and sealed by all the legatees, etc.]
In connection with the foregoing were a receipt for the installments agreed to be paid, and a general release (by the legatee now ultimately objecting), which release was expressed to be in consideration of $84.44 paid by the executors ; and contained, besides the usual language of a general release, this clause : “ The said sum of eighty four dollars and forty four cents being accepted and received by me in full payment and settlement of the balance due me-for and on account of any and all claims against the estate of said Y. Z. or said A. B., C. D. and E. F., as executors as aforesaid ; such settlement and payment to have the same force and effect as if made-under and pursuant to a decree of the Surrogate of Queens County upon a final accounting regularly made before said Surrogate by said A. B., C. D. and E. F., as executors as aforesaid.”
In Geyer v. Snyder, 140 N. Y. 394, the foregoing settlement was. held neither void nor voidable, although two of the surviving partners were also executors. (1) The other executor’s assent was enough to make a sale. (2) The sale was in effect by all the legatees. (3) A provisional estimate on the articles of copartnership, and the mere fact of entry of a larger valuation on the firm books was not sufficient to impeach the transaction for fraud. (4) Plaintiff had delayed to object for many years.