SIGMUND PINES et al., Appellants, *v.* LAWRENCE J. BECK, Respondent, and BECK CHEMICAL EQUIPMENT CORPORATION, Impleaded Defendant-Appellant.

Argued October 13, 1949; decided December 29, 1949.

*Julius Henry Cohen, David Brady* and *Albert I. Da Silva* for plaintiffs-appellants. I. Because plaintiffs' allegations of their own full performance under the contract were admitted by defendant's answer and stipulations, the trial court was precluded from raising the issue of performance *ex mero motu* and from finding that plaintiffs had not fully performed. (*Thompson* v. *Postal Life Ins. Co.,* 226 N. Y. 363; *Greene* v. *Smith,* 160 N. Y. 533; *Husted* v. *Van Ness,* 158 N. Y. 104; *Truesdell* v. *Sarles,* 104 N. Y. 164; *International Photo Recording Mach.* v. *Microstat Corp.,* 269 App. Div. 485; *Matter of Goebel,* 263 App. Div. 516.) II. The trial court erred in interpreting the contract as requiring plaintiffs to pay for plant and capital. The issue not having been raised or litigated at the trial, plaintiffs have been denied fair judicial process. (*Brooklyn Public Lib.* v. *City of New York,* 250 N. Y. 495; *Zimmerman* v. *Roessler & Hasslacher Chemical Co.,* 246 App. Div. 306, 272 N. Y. 566.)

*David Brady, Julius Henry Cohen* and *Albert I. Da Silva* for impleaded defendant-appellant.

*Solomon Rothfeld* and *William St. John Tozer* for respondent. I. The trial court was not precluded in determining whether or

not plaintiffs had fully performed their obligations under the contract. (*Greene* v. *Smith,* 160 N. Y. 533; *Oakville Co.* v. *Double-Pointed Tack Co.,* 105 N. Y. 658.) II. Plaintiffs at all times were obligated to furnish capital and pay for plant and equipment; defendant never stipulated anything to the contrary and never waived his right to enforce such provision. The trial court's interpretation was clearly in accordance with the agreement as written and the testimony given at the time of the trial by plaintiff Levine. III. The trial court was justified and under a duty to interpret the contract, pursuant to which an accounting was sought by plaintiffs, and to resolve all disputes between the parties in order that equity and justice might prevail and further litigation avoided. (*Consolidated Fruit Jar Co.* v. *Wisner,* 110 App. Div. 99, 188 N. Y. 624; *Kervan* v. *Hellman,* 110 App. Div. 655; *Wright* v. *Delafield,* 25 N. Y. 266; *Becker* v. *Krank,* 75 App. Div. 191; *Smith* v. *First Nat. Bank of Albany,* 151 App. Div. 317.) IV. Although the trial court found reformation unnecessary, it was under a duty to interpret the contract. (*Oakville Co.* v. *Double-Pointed Tack Co.,* 105 N. Y. 658; *Mott* v. *Oppenheimer,* 135 N. Y. 312.)

BROMLEY, J. Plaintiffs and the impleaded defendant appeal from an order of the Appellate Division, First Department, which modified and, as modified, affirmed (one Justice dissenting) an interlocutory judgment of the Supreme Court, New York County, granting plaintiffs an accounting under a contract for the joint exploitation of defendant's invention, a military flame thrower. The appeal from the nonfinal order is by leave of the Appellate Division upon the following certified questions:

" 1. The affirmative defenses and counterclaims having been dismissed upon the merits, did the pleadings and the stipulation of the parties in this case preclude the Trial Court from determining whether or not the plaintiffs had fully performed their obligations under the contract?

" 2. Does the judgment of the Trial Court, as modified by the Appellate Division, properly and correctly determine the issues between the parties? "

The essential facts are not in dispute. In 1941, defendant Beck, inventor of the weapon, was attempting to develop it commercially together with plaintiffs, Levine and Pines, a lawyer

and an accountant respectively. On December 4th, the three executed an informal memorandum providing for joint effort to produce the weapon for military use, the profits therefrom to be divided one half to Beck and one half to plaintiffs, the share of the latter to be " for their endeavors in the promotional end " of the venture. Following the execution of the memorandum the three parties negotiated with the Beattie Manufacturing Corporation for the manufacture of the flame throwers. On December 12th, a letter was written to the Beattie company proposing that Beattie manufacture the device for one half of the net profits and that the other half be paid to Beck Chemical Equipment Corporation, a company which was formed a week later with Beck, Pines and Levine as the only stockholders. This written proposal was initialed by Beck.

Subsequently, and in order to provide a firm basis for the anticipated agreement with the Beattie company, Beck, Pines and Levine entered into a formal contract, which is the basis of the present suit. It is dated December 31, 1941. The contract was to supersede the earlier memorandum and its declared purpose was to define the interests of the three in the Beck corporation and any proceeds of the invention. It recited that Beck had accepted a proposal by Levine and Pines to furnish plant and capital and to assist him in the development and sale of the weapon. It did not specifically obligate plaintiffs to furnish plant and capital at their own expense or out of their share of the profits. It provided for the formation of the Beck corporation with 45% of the stock going to Beck, 35% to Pines and 20% to Levine. It was agreed that all patents developed by Beck should be held by him as trustee for the benefit of himself, Pines and Levine and that all royalties and other proceeds derived therefrom should be distributed in the proportion of the ownership of stock as indicated above. This contract was executed by all three individuals and by the Beck corporation, although Beck did not sign it until January 13, 1942. On that day the proposal made by the Beck corporation to the Beattie company for the manufacture of the weapon in return for one half of the profits was accepted by the latter.

Plaintiffs commenced this suit in 1944, setting forth the contract of December 31, 1941, and alleging that they had duly and fully performed every term thereof. The complaint alleged

that Beck had breached his duties as trustee under the contract by his failure to prosecute patent applications and in other ways. It was alleged that plaintiffs had received nothing under the contract, although entitled to 35% and 20% respectively of all benefits. The complaint sought an accounting by defendant for all the assets of the trust, Beck's removal as trustee, and other relief.

By his answer Beck denied all the allegations relating to the existence and effect of the contract, admitting by silence, however, plaintiffs' assertion as to their own full performance. By two counterclaims, defendant also sought to obtain the cancellation or reformation of the contract for fraud. He alleged that plaintiffs had offered to supply capital and a plant, that it was informally agreed that in return for this and any personal service they might render plaintiffs were to receive one half of the profits, and that the omission of that condition in the informal memorandum was a breach of the confidential relationship between Beck and Levine, who had acted as Beck's attorney. Defendant asserted that plaintiffs signed the subsequent formal contract, which recited their duty in this respect, without any intention to perform; that Beck had objected to the division of profits under that contract, and had been assured that the written agreement was merely needed to satisfy the Beattie company, and later would be redrafted to meet defendant's objections — an assurance which was fraudulent and which plaintiffs had refused to carry out.

At the opening of the trial at Special Term it was stipulated at the suggestion of defendant's counsel, and with the acquiescence of the court, that the counterclaims should be tried forthwith and that, if defendant was not successful on his counterclaims, plaintiffs would be entitled to judgment on the complaint. On the trial which followed it was established that Beck, when he signed the contract in suit, knew that the Beattie company was to manufacture the weapon in return for one half of the profits; that he had acted under the belief that a revised arrangement with plaintiffs would be made, and that he would have considered 15% of the total profits a fair share for plaintiffs.

Special Term dismissed defendant's counterclaims, ordered that defendant account to plaintiffs under the trust and decided that defendant might charge against plaintiffs' share of the

proceeds the amounts payable to the Beattie company. The court found that plaintiffs had contracted to furnish the necessary capital, plant and equipment without intent to do so, but that Beck had participated with knowledge of the actual plan, and held that the contract was valid on the ground that Beck had not been misled as to the source of the plant and capital. Defendant has not appealed.

The court also found that the allegations of the complaint were admitted by defendant. However, it rejected a proposed finding that plaintiffs had fully performed, found that the plant and capital had been furnished by the Beattie company, and concluded that plaintiffs had breached the contract in that they failed to supply the plant, capital and equipment. The decision that there should be charged against the sums due plaintiffs under the contract the entire share of the profits owed to the Beattie company rested upon the latter holding.

The majority in the Appellate Division found no inconsistency between that result and defendant's stipulation for judgment, stating that the stipulation did not conclude defendant as to plaintiffs' " measure of damage " or foreclose the court " from determining the proper measure of damage." (275 App. Div. 749, 750.) The modification by that court merely clarified the judgment so as to make it plain that the entire net profit was to be employed in determining the respective shares, with the 50% share of the Beattie company to be deducted from the 55% share of plaintiffs. Thus Beck is to receive 90% of any sums received from the Beattie company and the plaintiffs are to receive 10%.

The dissenting Justice felt that the stipulation had concluded the trial court as to any issue save those raised by the counterclaims, and should have compelled the entry of judgment upon the allegations of the complaint.

Plaintiffs appeal on the ground that both courts below were in error and the impleaded defendant Beck corporation on the ground that it should receive the profits of the enterprise and account to the other parties.

The issue in this case turns upon the proper construction of defendant's concession made at the opening of trial that if he failed to establish his counterclaims plaintiffs would be entitled to judgment on the complaint. A decision inconsistent with

that agreement must be reversed (*Hine* v. *New York Elevated R. R. Co.,* 149 N. Y. 154; *Hong Kong & Shanghai Banking Corp.* v. *Cooper,* 114 N. Y. 388; *Matter of New York, L. & W. R. R. Co.,* 98 N. Y. 447; and see *Matter of Malloy,* 278 N. Y. 429, 433). In the *Hine* case (*supra*), which was a controversy over the value of plaintiff's easement of light and air which had been acquired by the railroad, the defendants had agreed, as a condition upon a temporary stay of injunction, that they would not question plaintiff's right to maintain the action should he subsequently sell his property. At the trial defendants proved a sale by plaintiff and challenged the judgment in his favor on that ground. The court said (149 N. Y., at pp. 160–161): "It is in the power of the parties to shape the facts upon which the cause shall be determined by their stipulations, when made deliberately and in good faith, and then the court will be justified in framing its judgment accordingly."

And in *Matter of New York, L. & W. R. R. Co.* (*supra*), in holding that the parties had effectively restricted the power of the Supreme Court to appoint commissioners for appraisal, the court said (98 N. Y., at pp. 452–453): "the agreement of the parties bound them and concluded the court in that proceeding, and the court was bound as between the parties to observe, enforce and carry out the agreement. Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce."

It is clear that the defendant's concession at the outset of the trial should have barred any judgment in conflict with the substantive allegations of the complaint, and that the judgment below is inconsistent with that stipulation. The inconsistency in the trial court's decision is most apparent in the finding that the " allegations of the complaint are admitted " and in the holding that plaintiffs had breached their duty. The issues pertinent to the latter conclusion — chiefly the scope and nature of plaintiffs' duties — were not, and could not have been, litigated. The decision below does not rest upon the appropriate " measure of damage " but upon plaintiffs' breach of the contract. Under those circumstances we are compelled to reverse, and direct that judgment be entered upon the allegations of the complaint as admitted by defendant.

The subsidiary questions posed on the appeal concern matters within the discretion of the trial court. We cannot say that Beck must be removed as trustee, or that, under the terms of this contract, the proceeds must be paid to the Beck corporation. If the latter can show any need for the proceeds, it may do so upon application to the trial court.

The orders should be reversed, with costs to appellants in all courts, and the case remitted to Special Term with a direction to enter judgment for the plaintiffs upon findings which are consistent with the allegations of the complaint as admitted by the defendant. The first question certified is answered in the affirmative. The second question certified is not answered.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Orders reversed, etc. [See 300 N. Y. 694.]